## Mesirov Appeal

*John A. Mullican*, for appellant.

*John E. Stevenson*, Special Deputy Attorney General, for Commonwealth.

ALESSANDRONI, J., May 28, 1954. — Petitioner in this matter filed an appeal from the order of the Secretary of Revenue suspending his operator's license for 90 days. The petition avers that petitioner violated no provision of The Vehicle Code and that the suspension was improper and without justification. This court heard the matter de novo; after hearing, the court makes the following

## Findings of Fact

1. Petitioner, while driving his motor vehicle on United State Route 30, in Chester County, Pa., was stopped, after driving in excess of 60 miles per hour.

2. Petitioner and another driver had successively passed each other over a distance of four miles, both driving at a speed in excess of the legal speed limit.

3. Route 30 is a three-lane highway. Traffic was moderate, the weather clear and dry.

4. No other violation was charged.

5. Petitioner has been driving for many years without violation of The Vehicle Code.

## Discussion

The question of the criteria to be applied to appeals from the order of the Secretary of Revenue suspending motor vehicle operators' licenses has been and continues to be a perplexing one. The issue seems to have been clouded rather than cleared by recent decisions of the Supreme Court. We shall therefore proceed cautiously to analyze them in an effort to ascertain the extent of our power in the premises, and with particularity, the scope of our discretion.

The procedure is no longer open to question. The appeal from the order of the Secretary of Revenue requires the court of common pleas to determine de novo the propriety of the suspension: Commonwealth v. Emerick, 373 Pa. 388. Neither the testimony taken before the Secretary of Revenue nor his action is part of the record in the common pleas court: Commonwealth v. Cronin, 336 Pa. 469. Following the hearing de novo, the court is required to make an independent finding of fact and exercise its discretion as to the propriety of suspension: Commonwealth v. Emerick, supra.

Before the court below on appeal, the hearing can take either of two roads. Where the evidence of the

Commonwealth is disputed, and there is credible conflicting testimony, the court must make findings of fact and exercise its discretion. If the testimony is undisputed, but appellant submits to the court extenuating facts and circumstances such as, inter alia, inadvertence, emergency, unintentional or accidental violations, including among others economic hardship, the court after considering the latter should exercise its discretion.

Under such principles appellant either contests the fact of violation, or confesses the violation and seeks to avoid the penalty by evidence of extenuating facts and circumstances. The present difficulty lies in determining what is sufficient to support a proper exercise of discretion.

Certain signposts are present. A court does not automatically abuse its discretion by discriminating between the circumstances in which speed violations are committed: Commonwealth v. Wagner, 364 Pa. 566. Therefore, it would appear that the appellate common pleas court must tread warily in its discrimination between circumstances. While the abuse is not automatic, the language indicates the existence of an inference toward such a conclusion.

Economic hardship is said to be a factor in determining the propriety of the suspension. In Commonwealth v. Emerick, supra, the court sustained the appeal and was reversed by the Supreme Court. There, appellant drove at a speed of 80 miles per hour and violated a "Stop" sign. Despite the finding of severe economic hardship, the court below was reversed.

In Commonwealth v. Greer, 373 Pa. 400, appellant was arrested for traveling 80 miles per hour on a dry, clear night. Appellant had never been arrested before for speeding and required his license for transportation for business and pleasure. The decision was reversed for manifest abuse of discretion.

So also in Commonwealth v. McCullough, 373 Pa. 402, appellant was charged with a speed of 80 miles per hour; he "thought" he did not exceed the speed limit. (Could this be construed to be inadvertent or unintentional as set forth in Commonwealth v. Wagner, supra?) It was appellant's second speeding offense. Despite a complete lack of transportation for his livelihood, the sustaining of the appeal was termed an abuse of discretion.

In Commonwealth v. Matil, 373 Pa. 404, appellant's license was suspended for traveling 70 miles per hour on a clear, dry night. He had a previous arrest for speeding; there were no aggravating circumstances. On the basis of economic hardship, the license was restored. The court below was reversed.

In Commonwealth v. Cornetti, 373 Pa. 407, appellant drove 70 miles per hour; he had been fined several times for driving through stop signs. Traffic on the highway was moderate. Economic hardship alone was held to be an abuse of discretion.

In Commonwealth v. Roher, 373 Pa. 409, appellant was charged with 70 miles per hour. There was some evidence of a race, but also some evidence of inadvertence. Appellant had never been arrested before. The court below found that defendant would be unable to operate his business without his license. The order was reversed, for abuse of discretion.

Almost identical rulings were made in Commonwealth v. Starcher, 373 Pa. 411, and Commonwealth v. Gaiser, 373 Pa. 413.

From the foregoing it appears that economic hardship is a relatively minor factor in the exercise of discretion. One or two of the foregoing cases had evidence of unintentional violations or inadvertent violations. The Supreme Court did not indicate that these factors altered the result in any measurable fashion. Therefore, it appears that all that remains is emer-

gency or accidental violations as sufficient extenuating circumstances to sustain an exercise of discretion in favor of an appeal.

Surely no one would argue that the mere mathematical measurement of speed is sufficient to support an exercise of discretion. If it were so though, the court would in effect raise the speed limit to some higher figure, say 60 miles per hour. No court could so decide. The relative speed is merely indicative of degree.

A factor that should carry some weight is the driving record of the individual involved. The court has not indicated what, if any, weight this should receive, other than including it in extenuating circumstances. We think it ought to carry considerable weight. However, the force of this is weakened when arrests and accidents are lumped in weighing the previous driving record.

Thus, in reviewing what has been said, we perceive the following: The appeal is heard de novo; the court makes its own findings of fact and conclusion in the exercise of its discretion. Certain factors are said to be important, these extenuating facts are inadvertence, emergency, unintentional or accidental violations, and include economic hardship, if any. But, as we have already observed, what is sufficient to warrant an exercise of discretion is not clear, and the effect is such as to bar effectively the exercise of any discretion.

In Commonwealth v. Wagner, supra, the court held that the circumstances of a violation can be a factor to consider. But suppose the violator who has some aggravating circumstances has a perfectly clean driving record and would suffer severe economic hardship, as opposed to the violator whose violation entails no aggravating circumstances, but the latter has an atrocious driving record. Should the court revoke both, revoke one, or neither? Hence, we note that aggravating circumstances are not the only consideration.

It is true that, for the most part, drivers who lose their licenses will suffer some economic hardship. But, what degree is sufficient to support an exercise of discretion. Some of the cases in 373 Pa. presented some rather appealing economic hardships. Some were combined with aggravated offenses and others were nonaggravated. Some had bad records of arrests and accidents, others had neither. Yet, all the cases were decided on the basis of a manifest abuse of discretion.

Our study of the decided cases indicates a judicial disinclination to restore licenses suspended for cause. It can be said that when the legislature prescribed a maximum of 50 miles per hour, that its wisdom determined 50 miles per hour was the limit of a safe maximum speed. Therefore, anyone exceeding the limit is beyond the maximum safe speed, and could be termed reckless. Courts should not be prone to nullify the act of assembly by indiscriminate restoration of licenses.

The court must take judicial notice of the present aggravated and crowded traffic conditions and the tremendous number of casualties that are sustained. However, in view of the policy of the statute and the decisions hereinbefore cited, it is difficult to ascertain what discretion, if any, remains to restore the driving privilege.

This case is a prime example. Here petitioner and another vehicle passed and repassed each other over a four-mile stretch of road; both were exceeding the limit. Petitioner asserts that he endangered no one's life or property. Traffic was moderate, the weather clear and dry. Petitioner alleges that the suspension was without justification and accuses the Secretary of Revenue of failing to exercise his discretion under the law. The scope of that discretion is irrelevant, because the hearing here is de novo.

Petitioner definitely violated The Vehicle Code. But he has been driving many years with an absolutely clear record.

Under the circumstances, we must dismiss the appeal, although we do so reluctantly. The area of discretion has been so circumscribed as to be nonexistent. Therefore, while we might be inclined to sustain the appeal, were it not for the decided cases hereinbefore cited, under the controlling decisions there is nothing left to the exercise of discretion.

### Conclusions of Law

1. Petitioner violated a provision of The Vehicle Code.

2. Under the law the secretary's action in suspending the license was justified.

3. The appeal must be dismissed.

### Order

And now, to wit, May 28, 1954, petitioner's appeal from the order of the Secretary of Revenue is dismissed.